## SCHWABACHER HARDWARE CO. v. SCHAFER et al.
### No. 4472–A.

District Court of Alaska. First Division. Juneau.
Feb. 28, 1942.

Robertson & Monagle, of Juneau, for plaintiff.

H. D. Stabler, of Juneau, and William Dewar, of Seattle, Wash., for defendants.

ALEXANDER, District Judge.

This is a suit brought by the Schwabacher Hardware Company, a corporation, as plaintiff, on its behalf and on behalf of the creditors of the defendant Schafer who were similarly situated, against James Schafer, William Dewar and Dorothy Dewar.

The facts stated in plaintiff's complaint are substantially, that the defendant James Schafer, while engaged in business at Skagway, Alaska, purchased from the plaintiff and its assignors, certain goods, wares and merchandise. That thereafter the defendant James Schafer sold the bulk of all of the stock of goods, wares and merchandise and all fixtures and equipment used in and about his hardware and mercantile business to the defendants William Dewar and Dorothy Dewar, without complying with the Bulk Sales Law.

Plaintiff then prays for judgment against Schafer for the sums sued for; that the sale by defendant Schafer to the defendants Dewar be declared fraudulent and void, and against said creditors; that plaintiff be decreed to hold a

lien against said goods, wares and merchandise, etc., of the Dewars which they allege to have been intermingled with the original stock since the date of the alleged fraudulent sale; and that the Dewars be enjoined from selling, transferring or otherwise disposing of said stock; that Dewars stock, or so much thereof as may be necessary to fully satisfy the judgment that plaintiff seeks against the defendant Schafer, be sold, and the proceeds thereof applied to the payment of the judgment sought against Schafer.

The defendants William and Dorothy Dewar have filed a demurrer to plaintiff's first amended complaint, on the ground and for the reason that same fails to state facts sufficient to constitute a cause of action against them.

■ The law as applied to cases of this character seems to be well settled.

In Fleischner et al. v. Bank of McMinnville et al., 36 Or. 553, 54 P. 884, 60 P. 603, at page 605, 61 P. 345, Judge Robert S. Bean, one of the ablest judges ever to sit on the Supreme Court of Oregon, speaking for that court, said: "It is settled that, before a creditor can maintain a bill to set aside the fraudulent conveyances of his debtor, he must either establish his claim by judgment, or acquire a lien by attachment." (Citing a number of Oregon cases).

In a much later case, Godwin v. Tuttle, 70 Or. 424, 141 P. 1120, 1122, Judge Burnett, speaking for the Oregon Supreme Court, reaffirms the rule in these words:

"If, in the absence of bankruptcy proceedings, the creditors themselves were seeking to collect their claims, it would indeed be necessary for them to establish their demands by recovering judgment thereon against the debtor, or at least to attach the property as a basis upon which to subject it to their demands as against its present possessor. It is well settled that creditors have no direct action against one holding the possession of property which might otherwise be subjected to payment of claims against the debtor, because there is no privity of contract between one in the possession of the property under such circumstances and the creditors

seeking to apply it to their claim. So it has been held often in this state that a creditor seeking to subject property to the liquidation of his claims while the goods are in the possession of a third party must previously establish his claim by judgment or acquire a lien by attachment [citing a long list of Oregon cases].

"The controlling proposition in such cases is that, if one would disturb a transaction which might otherwise be valid between the immediate parties to it, he must show his right to intermeddle. This is accomplished by establishing in a judicial proceeding that the former owner of the property was indebted to the claimant upon an unpaid demand."

The same is the rule in Washington.

There Judge Rudkin, speaking for the Washington Supreme Court, said: "The sole question presented on this appeal is this: Can a creditor of a vendor who sells property in bulk, without a compliance with the above-mentioned act [Bulk Sales Law], maintain a direct action at law against the purchaser to recover the amount of his debt? We think that he cannot. The only effect of a failure to comply with the requirements of the act, so far as the purchaser is concerned, is to render the sale fraudulent and void. It does not differ from any other transfer made in fraud of creditors, except in the matter of the proof of the fraud. It gives the creditor no direct remedy against the purchaser, either in terms or by implication."

Continuing, Judge Rudkin says: "It seems to be firmly established that the only remedy which the law affords a creditor against a fraudulent transfer of property by his debtor is to sue his debtor, and reach the property fraudulently transferred by attachment or garnishment. These remedies would seem to be adequate in all cases where the subject of the transfer is tangible personal property."

Continuing further, Judge Rudkin says:

"The remedy in equity is equally well defined. 'A fraudulent transfer is valid against all persons except those who proceed to appropriate the property by due course of

law to the satisfaction of the grantor's debts. As it is valid against a simple-contract creditor, such creditor cannot ask the aid of a court of equity to set aside the transfer, for it does not interfere with his rights. Equity has jurisdiction of fraud, but it does not collect debts. A creditor must establish his demand at law, and obtain a lien upon the property before the transfer interferes with his rights, or he has any title to claim relief in equity. No creditor can be said to be delayed, hindered, or defrauded by any conveyance until some property out of which he has a specific right to be satisfied is withdrawn from his reach by a fraudulent conveyance.' * * *

"Again: 'The second prerequisite of equitable relief is that the creditor shall obtain a lien by judicial process upon the property conveyed, for it is well settled that, in the absence of statute, a creditor who has not in some way acquired a right to have satisfaction out of his debtor's property specifically cannot come into a court of equity to impeach any conveyance made by his debtor on the ground of fraud.' * * * The only conflict of authority on any of the propositions above announced is whether one can proceed in equity upon a mere lien by attachment or otherwise, or whether he must first obtain a judgment at law against the fraudulent grantor. Unless, therefore, a transfer declared fraudulent and void by the act in question differs from other transfers declared void by other acts or by the principles of the common law, this action cannot be maintained. We can discover no logical distinction between the different classes of conveyances which the common and statutory law declare fraudulent. The remedy afforded an injured creditor must, upon principle, be the same in all cases, unless the Legislature has provided a different remedy. This, in our opinion, the Legislature has not accomplished by the act in question. The demurrer to the complaint should have been sustained." Rothchild Bros. v. Trewella, 36 Wash. 679, 79 P. 480, 481, 68 L.R.A. 281, 104 Am.St.Rep. 973.

In opposition to defendants' demurrer the plaintiff has cited a number of cases, none of which I think are directly in point.

On the other hand, the cases quoted from are based on statutes substantially identical with our own and follow on lines of decisions by those courts which have not been deviated from.

The demurrer of the defendants William Dewar and Dorothy Dewar is therefore sustained, and it is so ordered.